UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

H.P.,

                              Plaintiff,                              No. 24-CV-08655 (KMK)

                      v.                                              OPINION & ORDER

MONTICELLO CENTRAL SCHOOL DISTRICT,

                              Defendant.

Appearances:

Michael David Meth, Esq.
Meth Law Offices, PC
Chester, NY
*Counsel for Plaintiff*

Melissa L. Cowan, Esq.
Catania Mahon & Rider PLLC
Newburgh, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Plaintiff H.P. brings this Complaint against Defendant Monticello Central School

District, alleging violations of the Americans with Disabilities Act ("ADA") and the Individuals

with Disabilities Education Act ("IDEA"), and bringing several state law tort claims. Before the

Court is Defendant's Motion to Dismiss pursuant to Rule 12(b)(6). For the reasons explained

below, the Complaint plausibly states a claim for violations of the ADA, but does not plausibly

allege facts that support Plaintiff's standing to assert a violation of the IDEA, and alleges

insufficient facts from which to conclude the state-law claims asserted in the Complaint are

timely. Accordingly, the Court denies the Motion in part and grants it in part.

I. Background

A. Factual Background

The followings facts are drawn from the Complaint and are assumed true for the purposes of deciding the Motion to Dismiss.[1] Plaintiff began attending school in the Monticello Central School District in 2020. (Compl. ¶ 12 (Dkt. No. 1).) Because of his diagnoses for attention deficit/hyperactivity disorder ("ADHD") and agnosia, which together "substantially limit [Plaintiff's] major life activities including focus, organization, time management, behavior, visual processing, and peer interactions and connections," (id. ¶ 6), Plaintiff "was classified as a special education student" and "ha[d] a District-issued Individual Education Plan ['IEP'],'" (id. ¶ 5.) The plan granted him accommodations for completing tests and assignments in school.

During the 2020–21 academic year, Plaintiff came to be regularly verbally harassed and threatened by Z., then a former student of his school, and Z.'s associates. (Id. ¶ 18.) Plaintiff was "loudly ridiculed, pointed at, called names such as 'retard' and 'pussy' in front of other students and school staff" in and out of the school building, but "no . . . staff member of the Defendant District ever intervened." (Id. ¶ 36.) Z. and her associates would also threaten Plaintiff and his mother with violence against Plaintiff (including threats of tasing, which they

---

[1] Both Parties attach hundreds of pages of exhibits to their submissions on this Motion. To the extent these exhibits seek to dispute or support factual allegations in the Complaint and are not matters of which the Court can take judicial notice, the Court cannot consider them at the Motion to Dismiss stage. *See Floyd v. Rosen*, No. 21-CV-1668, 2022 WL 1451405, at *1 (S.D.N.Y. May 9, 2022) ("Generally, when considering a motion to dismiss, the Court's review is confined to the pleadings themselves, because to go beyond the allegations in the complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to Rule 56." (internal citations and quotation marks omitted, alterations adopted)).

did to another student), and would "mock[] [him] for" leaving class pursuant to his accommodations. (*Id.* ¶¶ 20–22.)

Plaintiff began high school in the District in the 2021–22 school year. The students at this new school "had actual notice of Plaintiff's disability" because his "accommodations [were] witnessed by other students during class time on a daily basis." (*Id.* ¶ 31.) Students approached Plaintiff daily to confirm whether he was H.P., "because they or another student wanted to fight him." (*Id.* ¶ 25.) Plaintiff "verbalized his concerns to the principal," (*id.*), and "[e]very time a student threatened Plaintiff," Plaintiff's mother organized a "meeting with the school administration to address the ongoing bullying and threats." (*Id.*) In response, the administration offered that a security guard could watch Plaintiff, but "[t]hat did not happen"— although the school did offer Plaintiff access to a guidance counselor and her office during the times he felt threatened, Plaintiff alleges the counselor was seldom in her office. (*Id.* ¶¶ 26, 28– 29) The school's principal and guidance counselors also rejected Plaintiff's mother's request for Plaintiff to receive full-time remote learning. (*Id.* ¶ 27.) During this school year, Plaintiff shared a class with N.W., a student who was related to Z. (*Id.* ¶ 30.) Starting in January 2022, "Plaintiff began receiving threats [to his safety] from other students on behalf of Z., N.W., and other students on a regular basis"; those students "called him names such as 'retard' and 'pussy'" "openly in front of . . . school staff." (*Id.* ¶ 36.) Plaintiff and his mother then met with the school's principal and a school guidance counselor and social worker to discuss "the threats that Plaintiff faced on a daily basis." (*Id.* ¶¶ 37–39.) Plaintiff's mother, "[w]ith little assistance and participation" from the school employees at the meeting, "formed Plaintiff's First Safety Plan," which called for: (1) each of Plaintiff's teachers to be notified of his "safety and updated security

3

situation," (2) school security guards to "keep a close eye on" Plaintiff as he moved through the hallways, and (3) for "the situation" to be communicated to all school staff. (*Id.* ¶ 41.) Plaintiff alleges this "safety plan was never followed" as to any of the three items, and he "continued to face daily harassment and threats." (*Id.* ¶¶ 42–43.)

The harassment escalated significantly on February 7, 2022, when N.W. and four of his associates, without permission, left their class, "roam[ed] the school hallways," and entered Plaintiff's music class. (*Id.* ¶ 46.) While another student recorded, N.W. and four students "began brutally beating Plaintiff" while a "staff member in the room . . . did nothing," and left after levying additional threats and profanities at Plaintiff that have been listed above. (*Id.* ¶¶ 47–50.) Plaintiff then "fled the classroom . . . in hopes of obtaining the assistance of a safety officer, hall monitor, security guard, or any other employee," but found none in the hallways and proceeded home. (*Id.* ¶¶ 52–53.) Plaintiff's mother reported the incident to the police when Plaintiff arrived home; the school did not report the assault to her in the interim. (*Id.* ¶ 56.) Plaintiff continues to suffer from injuries the assault inflicted. (*Id.* ¶ 59.) While a state court issued Plaintiff a restraining order against N.W., the school failed to enforce the order, and the threats and harassment continued. (*Id.* ¶¶ 61–62.) Following a meeting with school administration after the assault, Defendant "signed Plaintiff up for virtual learning" and "an in-person tutor at his home five days per week." (*Id.* ¶ 72.) Accordingly, "Plaintiff did not return to the school for the rest of" that school year. (*Id.* ¶ 70.)

For the following school year (2022–23), Defendant placed Plaintiff "in an alternative school . . . over 35 miles away," a three-hour round trip. (*Id.* ¶ 76.) This school "was not an equivalent school setting" to Plaintiff's school in the District—most students at this school "had

severe behavioral problems or severe mental and physical disabilities," and the curriculum "was not designed for students who," like Plaintiff, as recognized in his IEP, could "succeed in a mainstream school setting." (*Id.* ¶ 78.) Plaintiff's "mental health and academic progress . . . sharply declined" there, so he "requested to be placed back in" the school from which he was transferred. (*Id.* ¶ 80.)

Upon Plaintiff's return to the school, two new "safety plans" were proposed. One was the same as his previous plan, with two additions—Plaintiff could leave class early to reach his next class without encountering other students in the halls, and he could be picked up early from school on days he felt threatened. (*Id.* ¶¶ 81–82.) Under the second plan, (1) Plaintiff's classes would be physically close to one another to minimize his time spent unsupervised in school hallways, (2) Plaintiff could enter the nearest classroom if threatened by any students, and (3) Plaintiff would not be placed in classes or wings of the school with students who had harassed him. (*Id.*) Plaintiff alleges the school's compliance with the new plans was checkered. On his first day back, Plaintiff was sent home early after the school had placed him in "almost all of the same classes as" the students who had harassed him, including N.W. (*Id.* ¶ 84.) While "[t]he next few days went smoothly," a friend of N.W.'s accosted Plaintiff in a hallway; after turning away, Plaintiff encountered N.W., who "was not supposed to be in that hallway or . . . wing." (*Id.* ¶¶ 85–86.) N.W. then threatened and yelled at Plaintiff, using the same language described above. (*Id.*) Pursuant to the new safety plan, Plaintiff entered the nearest classroom and left early with his mother. (*Id.* ¶ 86) On his way out of the school, the student who threatened him earlier in a hallway "lunged towards Plaintiff's mother and Plaintiff," and was physically separated from them by a security guard. (*Id.* ¶ 87.) Plaintiff was also threatened by other

5

students at his gym class because school staff had inadvertently disclosed to N.W. where and when that class was (in an effort to tell N.W. to keep his distance). (*Id.* ¶ 88.) "Following these incidents, Plaintiff was removed from the . . . school again." (*Id.* ¶ 89.) In March 2023, Plaintiff and his mother had a meeting with officials and staff from both Plaintiff's school in the District and the alternative school to which he was previously transferred. (*Id.* ¶ 90.) At this meeting, "Plaintiff's mother expressed Plaintiff's desire to be in a mainstream school setting," with "the same [IEP] previously in place with an enhanced safety plan," but that option "was never offered" by Defendant. (*Id.* ¶ 92.)

Plaintiff then moved in with his aunt in another town, where he attended a different high school. (*Id.* ¶ 93.) Because "Plaintiff does not feel safe returning to his home due to ongoing threats against him made by students and adults while in school" in the District, he has remained in the town where his aunt lives. (*Id.*)

B. Procedural History

Plaintiff "exhausted all available administrative remedies" before bringing this Action. (Compl. ¶ 159.) After 50-h hearings[2] where Plaintiff (then a minor) and his mother testified, Plaintiff first filed a complaint before Judge Seibel on October 17, 2022. (Compl. (Dkt. No. 1), *Doolan v. Monticello Cent. Sch. Dist.*, No. 22-CV-08759.) Judge Seibel granted Plaintiff leave to amend his complaint before Defendant filed a motion to dismiss. *Doolan v. Monticello Cent. Sch. Dist.*, No. 22-CV-08759, Dkt. No 15. Rather than amend the complaint, Plaintiff moved the

---

[2] *See* Gen. Mun. L. § 50-h ("Wherever a notice of claim is filed against a . . . school district . . . the . . . school district shall have the right to demand an examination of the claimant relative to the occurrence and extent of the injuries or damages for which claim is made[.]").

case to state court and voluntarily dismissed the federal complaint without prejudice, with Judge

Seibel's permission, on February 17, 2023. *Doolan v. Monticello Cent. Sch. Dist.*, No. 22-CV-

08759, Dkt. No 17. (Mot. to Dismiss 6 (Dkt. No. 17).) Plaintiff and his mother filed another

Notice of Claim on August 17, 2023. (Mot to Dismiss Ex. I (Dkt. No. 17).) After new 50-h

hearings, Plaintiff, now an adult, filed this Complaint on November 14, 2024. (Compl.)

Defendant moved to dismiss each count in the Complaint on March 11, 2025. (Mot. to Dismiss

(Dkt. No. 17).)

## II. Discussion

### A. Standard of Review for Motion to Dismiss

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of

[its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of

Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

"Nor does a complaint suffice if it tenders naked assertions devoid of further factual

enhancement." *Id.* (alteration adopted and internal quotation marks omitted). Instead, a

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative

level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any

set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must

7

allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [the] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (noting that a district court should consider only the complaint,

documents appended to the complaint or incorporated by reference, and matters judicial notice can be taken of in ascertaining facts for a motion to dismiss).

### B. Analysis

The Complaint asserts six claims—(1) violations of Title II of the ADA, (Compl. ¶¶ 140–175); (2) ADA violations substantively identical to those described in Count I, I (*id.*); (3) violations of the IDEA (*id.* ¶¶ 176–190); (4) negligence under state law (*id.* ¶¶ 191–214); (5) violations of school district rules and policies under state law (*id.* ¶¶ 215–235); and (6) intentional infliction of emotional distress under state law (*id.* ¶¶ 236–242).

### 1. ADA Claims

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," with some exceptions not relevant here. 42 U.S.C. § 12132. "[F]or a plaintiff to establish a *prima facie* violation under" Title II, "[he] must demonstrate (1) that [he] is a qualified individual with a disability; (2) that the defendants are subject to [Title II]; and (3) that [he] was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability." *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004) (alterations adopted) (internal citations and quotation marks omitted). Where the alleged violation stems from bullying by peers, courts in the Second Circuit hold plaintiffs "may plead the third [*Powell*] element by alleging a statutory violation resulting from 'deliberate indifference' by [the defendant as] to the rights secured to disabled persons by" Title II that are impaired by that

bullying. *Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 231–32 (E.D.N.Y. 2015) (citing *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98 (2d Cir. 2001)); *accord Doe v. Torrington Bd. of Educ.*, 179 F. Supp. 3d 179, 195 (D. Conn. 2016) (explaining that deliberate indifference to a statutorily protected right is sufficient to sustain a claim); *Preston v. Hilton Cent. Sch. Dist.*, 876 F. Supp. 2d 235, 242 (W.D.N.Y. 2012) ("Courts in the Second Circuit and elsewhere have subsequently applied . . . [the deliberate indifference requirement from  Title IX cases] to peer-on-peer harassment claims under the ADA[.]" (citing *S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 454–55 (6th Cir. 2008), and *K.M. v. Hyde Park. Cent. Sch. Dist.*, 381 F. Supp. 2d 343, 359 (S.D.N.Y. 2005))).[3]  A plaintiff must also offer "some factual allegation linking the disability and the bullying." *Eskenazi-McGibney*, 84 F. Supp. 3d at 233.  And the school must have actual notice of that bullying. *Doe*, 179 F. Supp. 2d at 197.

The Court begins with the first element.  Plaintiff alleges he is a "qualified individual with a disability," 42 U.S.C. § 12132, because he is "diagnosed with [ADHD] and [a]gnosia," which "substantially limit [his] major life activities including [his] focus, organization, time management, behavior, visual processing, and peer interactions and connections."  (Compl. ¶ 6.) Defendant overlooks this part of the Complaint in arguing "Plaintiff fails to allege any facts about how his claimed disability substantially limits any major life activity."  (Mot. to Dismiss

---

[3] A recent Supreme Court case did not disturb the Second Circuit's use of deliberate indifference as the standard in ADA cases in this context. *See A.J.T. ex rel. A.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 344–45 (2025) (holding the same showing for "intentional discrimination" under the ADA applies in and out of schools, including via "deliberate indifference," which "does not require a showing of personal ill will or animosity toward the disabled person"); *see also E.W. v. Mt. Vernon Community Sch. Corp.*, No. 23-CV-01992, 2025 WL 3142173, at *32, *34 (S.D. Ind. Sept. 29, 2025) (citing *A.J.T.* in applying a deliberate indifference standard to an ADA claim alleging a school's response to disability-related bullying was discriminatory).

12 (Dkt. No. 17).)  Congress enumerated a non-exhaustive list of "major life activities,"

including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping,

walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating,

thinking, communicating, and working," along with "major bodily functions," such as the

operation of the immune system or brain function.  42 U.S.C. § 12102(2)(A)–(B).  To the extent

Plaintiff pleads his diagnosed conditions "substantially limit" his "focus," "visual processing,"

and his "peer interactions and connections," he invokes three enumerated major life activities—

"concentrating," "seeing," and "communicating"—and it is plausible Plaintiff's conditions

impede those functions.  *Id.*  (Compl. ¶ 6.)  Accordingly, the Complaint pleads enough to satisfy

the first element at this stage.  And Defendant does not contest that, as a school district, it is

subject to Title II.  *See* 42 U.S.C. § 12132.  So, the second element, too, is satisfied.

The third element is also met because the Complaint plausibly alleges Defendant's

deliberate indifference to Plaintiff's disability-related harassment denied him the opportunity to

participate in or benefit from his education.

There are sufficient factual allegations linking Plaintiff's disability and his bullying.  *See*

*Eskenazi-McGibney*, 84 F. Supp. 3d at 233.  (*See* Compl. ¶ 19, 36, 50, 86 (alleging students

called Plaintiff "retarded")[4]; *id.* ¶ 13 (alleging "Plaintiff received accommodations in school that

were known to other students and [Plaintiff] was incessantly bullied due to [his] disabilities"); *id.*

---

[4] Defendant disputes "Plaintiff's convenient additional allegation that students called [him] a 'retard'—an obvious slur towards individuals with developmental and/or physical disabilities," because Plaintiff "testified to the contrary" when previously asked if his harassers called him that word.  (Mot. to Dismiss 11 (Dkt. No. 17).)  But as noted above, the Court must accept as true the allegations in the Complaint at this stage.  *See Daniel*, 992 F. Supp. 2d at 304 n.1.

11

¶ 23 ("Plaintiff left classes for some tests and assignments, and had other accommodations, pursuant to his IEP[,] and was mocked for it by these students.").)  Accordingly, "Plaintiff[] ha[s] sufficiently pled that the alleged harassment was not merely generalized bullying, but was instead related to the perceived nature of [Plaintiff's] disability." *Spring v. Allegany-Limestone Cent. Sch. Dist.*, No. 14-CV-476S, 2017 WL 6512858, at *6 (W.D.N.Y. Dec. 20, 2017).

The Complaint also supports plausible inferences that Defendant was aware both that other students were harassing Plaintiff, and that the harassment was related to Plaintiff's disability.  Plaintiff "repeatedly verbalized his concerns" about the bullying to the school's principal, "who dismissed them," (*id.* ¶ 25); "repeatedly informed teachers, security guards, and guidance counselors of his fears and the threats and harassment against him," (*id.* ¶ 35); some of that harassment, including being called "retard," occurred "openly in front of other students and school staff," (*id.* ¶ 36); and Plaintiff and his mother repeatedly met with school administration in meetings where they "explain[ed] the threats that Plaintiff faced on a daily basis," in which it is plausible to infer the school administration was apprised of the disability-related harassment, (*id.* ¶ 38; *see also id.* ¶ 90).

And the Complaint plausibly alleges Defendant's response was "clearly unreasonable in light of the known circumstances." *Spring*, 2017 WL 6512858, at *6 (quoting *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)).  At first, the school's principal "dismissed" Plaintiff's repeated concerns about his bullying. (*Id.* ¶ 25).  The school offered a security guard to watch him, which "did not happen," (*id.* ¶ 26), and a guidance counselor's office for Plaintiff to seek refuge in, which "was empty and locked" and which he "was never able to actually use," (*id.* ¶¶ 27–28).  During the January 19, 2022 meeting,

12

Plaintiff's mother "formed Plaintiff's First Safety Plan essentially on her own," "[w]ith little assistance and participation from" school administrators," all while Plaintiff alleges the principal "never spoke during the meeting," but "exclusively sat on a large, grey exercise ball in the corner of the room and bounced up and down." (*Id.* ¶¶ 38–41). Less than a month later, Plaintiff was violently assaulted by his usual bullies in a classroom Plaintiff alleges the bullies accessed in violation of school policies. (*Id.* ¶¶ 50, 55). Defendant then did not enforce a restraining order against Plaintiff's primary harasser. (*Id.* ¶ 62). The Complaint thus plausibly alleges Defendant "knowing[ly] refus[ed] to take any action in response to" the bullying through meaningful portions of the period described in the Complaint, *K.M. ex rel. D.G. v. Hyde Park Cent. Sch. Dist.*, 381 F. Supp. 2d 343, 360 (S.D.N.Y. 2005) (quoting *Davis*, 526 U.S. at 650–51); *see also J.R. v. N.Y.C. Dep't of Educ.*, No. 14-CV-0392, 2015 WL 5007918, at *5 (E.D.N.Y. Aug. 20, 2015) (holding defendants' "alleged complete failure to address the bullying was 'clearly unreasonable' and tantamount to deliberate indifference"), *overruled in part on other grounds*, *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86 (2d Cir. 2020); *Preston*, 876 F. Supp. 2d at 242 (holding "that the plaintiffs have sufficiently stated a claim that the defendants acted with deliberate indifference to the harassment of [plaintiff] by his peers because of his disability" when "on multiple occasions," plaintiffs "notified multiple District employees of the ongoing harassment . . . [but] those individuals nonetheless failed to act, acquiesced in the harassment of [plaintiff] and imposed no discipline on [plaintiff's] harassers").

Finally, the bullying clearly "denied" Plaintiff "the opportunity to participate in or benefit from [D]efendants' services, programs, or activities." *Spring*, 2017 WL 6512858, at *5 (quoting *Preston*, 876 F. Supp. 2d at 241). Plaintiff need not show he was "physically prevented from

13

access"—rather, only that the harassment by students was "so severe, pervasive, and objectively offensive" and that "so undermines and distracts from the victims' educational experience" that they are "effectively denied equal access to an institution's resources and opportunities." *Preston*, 876 F. Supp. 2d at 241 (quoting *Davis*, 526 U.S. at 650–51). Defendant does not contest that Plaintiff has alleged facts sufficient to satisfy this requirement in its Motion to Dismiss. (Mot. to Dismiss 9–12 (Dkt. No. 17).) Plaintiff alleges he suffered severe physical and psychological injuries from the February 2022 assault, (Compl. ¶ 48, 59), that he "did not return to school for the rest of" that year, (*id.* ¶ 70), and that he ultimately had to leave the school district because "an enhanced safety plan . . . was never offered" and he "does not feel safe returning to his home due to ongoing threats . . . in school," (*id.* ¶ 93). *See Preston*, 876 F. Supp. 2d at 242 ("Plaintiffs allege that the cumulative effect of the harassment was that [the student] discontinued attending school, became profoundly disturbed, and was so emotionally crippled that he was unable to return to class or complete final exams."). The Complaint therefore meets the third *Powell* element as well.

While schools are not obligated to eliminate disability-related bullying that denies students an opportunity to participate in their education, the ADA obligates schools at least to try, and Plaintiff plausibly claims his school did not. Accordingly, the Motion to Dismiss is denied as to Counts I and II.

### 2. IDEA Claims

"Under the IDEA, states receiving federal funds must provide 'all children with disabilities' a 'free appropriate public education,'" commonly referred to as a "FAPE." *Hardison v. Bd. of Educ. of Oneonta City Sch. Dist.*, 773 F.3d 372, 376 (2d Cir. 2014) (quoting

14

20 U.S.C. § 1412(a)(1)(A)).   "To ensure that qualifying children receive a FAPE, a school district must create an individualized education program ('IEP') for each such child."  *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015) (quoting *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012)).  The Second Circuit "has not decided when the failure to address bullying in a student's IEP results in a substantive denial of a FAPE."  *B.D. v. Eldred Cent. Sch. Dist.*, 661 F. Supp. 3d 299, 314 (S.D.N.Y. 2023) (citing *C.S. v. Yorktown Cent. Sch. Dist.*, No. 16-CV-09950, 2018 WL 1627262, at *28 (S.D.N.Y. Mar. 30, 2018)).  Where the IDEA claim is based on a school's response to bullying, district courts in the Second Circuit ask whether "school personnel [were] deliberately indifferent to, *or fail[ed] to take reasonable steps to prevent*[,] bullying that substantially restricted a child with learning disabilities in her educational opportunities."  *T.K. v. New York City Dep't of Educ.*, 32 F. Supp. 3d 405, 417 (E.D.N.Y. 2014) (emphasis added), *aff'd*, 810 F.3d 869, 874 n.3 (2d Cir. 2016) (declining to express an "opinion as to whether the District Court's . . . test for determining when bullying results in the substantive denial of a FAPE correctly states the law"); *see also B.D.*, 661 F. Supp. 3d at 313–14 (applying *T.K.*'s test); *see G.S. ex rel. L.S. v. Fairfield Bd. of Educ.*, No. 16-CV-1355, 2017 WL 2918916, at *16 (D. Conn. July 7, 2017) (same).  Failure to take reasonable steps to prevent bullying—a standard that sounds in negligence—is a lower bar than deliberate indifference, so the ADA and IDEA claim do not necessarily rise and fall together.  *Cf. Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("The term [deliberate indifference] first appeared in the United States Reports in *Estelle v. Gamble* . . . and its use there shows that deliberate

15

indifference describes a state of mind more blameworthy than negligence.").[5]  But unlike in the ADA context, for an IDEA claim to succeed, Defendants did not need notice that the bullying was a consequence of discrimination for Plaintiff to succeed on his IDEA claim; nor does the bullying in fact need to be connected to the discrimination.  *See T.J. ex rel. B.W. v. Bd. of Educ. of Mt. Vernon City Sch. Dist.*, No. 17-CV-9592, 2019 WL 13170168, at *15 (S.D.N.Y. Sept. 30, 2019) (approvingly citing *T.K.* as holding "schools can deny a child a FAPE under the IDEA by failing to take reasonable steps to prevent bullying that substantially restricts a child with learning disabilities in her educational opportunities, regardless of whether the bullying is motivated by the student's disability" (internal citations and quotation marks omitted) (alterations adopted)).

Plaintiff's IDEA claim must be dismissed because Plaintiff does not seek relief on that claim that this Court can award.  "Plaintiff seeks monetary damages for the period during which his right to a FAPE was impinged."  (Compl. ¶ 190.)  The Supreme Court has held "compensatory damages" are "a remedy everyone before us agrees IDEA cannot supply." *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 147 (2023).  The IDEA does allow certain backward-looking injunctive relief—for example, compensatory education for periods a FAPE was denied, *see Garro v. State of Conn.*, 23 F.3d 734, 736 (2d Cir. 1994)—but Plaintiff does not seek this sort of relief here.  In particular, the Supreme Court has clarified that "the reimbursement contemplated by [IDEA] is not a form of damages"—instead, it "merely requires the defendant

---

[5] While the standards for deliberate indifference can be context-dependent, *see, e.g.*, *Hightower v. City of Philadelphia*, 130 F.4th 352, 356 (3d Cir. 2025) (contrasting the deliberate indifference showings required for Eighth and Fourteenth Amendment claims), the usage of the term in other contexts is still instructive here.

16

to belatedly pay expenses that it should have paid all along," like extra educational expenses a plaintiff had to incur because of her school's denial of a FAPE. *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 484 (2d Cir. 2002) (citing and describing *Burlington Sch. Cmte. v. Mass. Dep't of Educ.*, 471 U.S. 359, 370–71 (1985)), *abrogated on other grounds by Luna Perez*, 598 U.S. at 147–48. Plaintiff's request for money damages here is not tied to a request for reimbursement. And finally, while plaintiffs can seek money damages *under § 1983* for violations of IDEA—for example, where a school district denies "access to administrative remedies under the IDEA[]," *Polera*, 288 F.3d at 483 n.5 (collecting cases)— Plaintiff does not do so here. *Accord R.B. ex rel. L.B. v. Bd. of Educ. of City of New York*, 99 F. Supp. 2d 411, 418 (S.D.N.Y. 2000) (finding IDEA does not preclude § 1983 money damages claims).

Where a plaintiff seeks relief this Court cannot award, that plaintiff lacks standing because their injury is not redressable by an order of this Court. *See Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) ("[A] plaintiff must demonstrate standing for . . . each form of relief that is sought." (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). Accordingly, Plaintiff's "Individuals with Disabilities Act . . . claim[] must be dismissed because under the IDEA, [Plaintiff] cannot obtain the relief [he] seek[s]." *Zahran ex rel. Zahran v. N.Y. Dep't of Educ.*, 306 F. Supp. 2d 204, 214 (N.D.N.Y. 2004). Count III is therefore dismissed without prejudice.

### 3.  Statutes of limitations on state claims

A threshold issue for the state-law claims is whether they comply with the applicable statute of limitations on tort claims against agencies of state government. Federal courts hearing

17

state-law claims must apply relevant state law governing statutes of limitations, including tolling principles, for those claims. *See Jinks v. Richland Cty.*, 538 U.S. 456, 465 (2003) ("For purposes of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) . . . statutes of limitations are treated as substantive."). Defendant argues plaintiffs suing agencies of the state for damages—including school districts—must serve a notice of claim on those defendants within 90 days of when the claim accrues, and initiate their suit within a year and ninety days of when the claim accrues. (Mot. to Dismiss 16 (Dkt. No. 17).) *See* CPLR § 217-a (listing "action[s] for damages or injuries to real or personal property . . . against any political subdivision of the state" among those which "shall not be commenced more than one year and ninety days after the cause of action therefor shall have accrued or within the time period otherwise prescribed by any special provision of law"). [6] Therefore, to the extent "Plaintiff bases [his] claim" on "the alleged bullying and assault on February 7, 2022[, it] is well outside the applicable statute of limitations" because he filed his Complaint on November 14, 2024—more than a year and ninety days from that assault, although Plaintiff's *first* claim, which was voluntarily dismissed before Judge Seibel, was filed on October 14, 2022, and would have been within that limitations period. (Mot. to Dismiss 16 (Dkt. No. 17).)

---

[6] While Plaintiff's claim for violation of district policies is not presented as a tort, it is still subject to C.P.L.R. § 217-a because it sounds in negligence—that is, Plaintiff presents those policies not as providing a private right of action, but as setting a "duty" which Defendant "breached," causing "injuries" to Plaintiff, due to Defendant's "negligent and culpable conduct." (Compl. ¶ 216, 227, 232). *See Catlin v. City of N.Y.*, 241 N.Y.S.3d 870 (N.Y. Sup. Ct. 2025) ("For tort claims, the statute of limitations is one year and ninety days from the date the cause of action accrues." (citations omitted)); *Bd. of Mgrs. of Lido Beach Towers Condominium v. City of Long Beach*, 204 N.Y.S.3d 145, 146 (App. Div. 2024) (holding C.P.L.R. § 217-a did not alter a statute of limitations for certain actions against municipal defendants that were "not founded in tort").

The unusual posture of this case makes this issue challenging. Rather than move to reopen the voluntarily dismissed claim before Judge Seibel and amend his Complaint to add additional factual allegations,[7] which may have allowed Plaintiff to avail himself of relation back without encountering any statute of limitations issues, *see* Fed. R. Civ. P. 15(c)(1)(C); *Glob. Leadership Found. v. Comm'r of Fin. of the City of N.Y.*, 190 N.Y.S.3d 37, 38 (App. Div. 2023) (discussing relation back as available in the CPLR 217 context), Plaintiff opened a new proceeding before this Court, which precludes relation back, *see Sibanda v. Elison*, No. 23-CV-5752, 2024 WL 3835220, at *4 n.7 (S.D.N.Y. Aug. 14, 2024) ("[A]ny newly filed action will not relate back to the filing of the original Complaint[.]" (citation omitted)).

Before assessing whether C.P.L.R. § 217-a bars Plaintiff's claim, the Court must first determine when Plaintiff's claim accrued. Here, each of Plaintiff's claims—negligence, violation of district policies, and intentional infliction of emotional distress—would have accrued at the time Defendant's negligence first injured him. *See* Siegel N.Y. Prac. § 40 (6th ed. 2024) (explaining that in "personal injury case[s] predicated on negligence," the claim accrues "at the moment of injury"); *Wilson v. Erra*, 942 N.Y.S.2d 127, 129 (App. Div. 2012) ("A cause of action alleging intentional infliction of emotional distress accrues on the date of injury." (citation

---

[7] The Court notes it was only after this case was filed that the Supreme Court held a voluntary dismissal without prejudice could be reopened under Rule 60(b). *Waetzig v. Halliburton Energy Servs.*, 604 U.S. 305, 311–12 (2025). But within the Second Circuit, courts have long treated voluntary dismissals that way. *See Crystal Waters Shipping Ltd. v. Sinotrans Ltd. Project Transp. Branch*, 633 F. Supp. 2d 37, 40 n.1 (S.D.N.Y. 2009) ("A voluntary dismissal under Fed. R. Civ. P. 41(a)(1)(i) is treated as a final judgment or order under Rule 60(b)." (citing *Steiner v. Atochem S.A.*, No. 89-CV-7990, 2002 WL 1870322 (S.D.N.Y. Aug. 13, 2002)); *cf. Samake v. Thunder Lube, Inc.*, 24 F.4th 804, 816 n.1 (2d Cir. 2022) (Menashi, J., concurring) ("[T]he usual procedure to set aside a notice of dismissal is through a Rule 60(b) motion to vacate the notice.").

omitted)); *Pape Ventures, Inc. v. Am. Sports Media, L.L.C.*, 171 N.Y.S.3d 675, 677 (App. Div. 2022) (explaining that "accrual occurs when the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged" and "[g]enerally" this accrual occurs "upon an injury being sustained" (citations and quotation marks omitted)); *City Store Gates Mfg. Corp. v. Empire Rolling Steel Gates Corp.*, 979 N.Y.S.2d 606, 607 (App. Div. 2014) ("Generally, tort claims accrue upon an injury being sustained[.]").  As Defendant would have it, Plaintiff's claim accrued when he was assaulted in February 2022—the first date at which, per the Complaint, he suffered a physical injury.  And his November 2024 Complaint is more than one year and ninety days from that assault.

But "under New York law, 'despite the general principle that a cause of action accrues when the wrong is done, regardless of when it is discovered, certain wrongs are considered to be continuous wrongs, and the statute of limitations, therefore, runs from the commission of the last wrongful act.'"  *Neufeld v. Neufeld*, 910 F. Supp. 977, 982 (S.D.N.Y. 1996) (quoting *Leonhard v. United States*, 633 F.2d 599, 613 (2d Cir. 1980)) (alteration adopted); *see also* Siegel N.Y. Prac. § 40 ("Continuing wrongs, such as a continuous trespass, avoid the barrier of the statute of limitations altogether by being deemed to accrue constantly.").  Drawing inferences in Plaintiff's favor, because the Complaint alleges the February 2022 assault was one instance in a pattern of bullying to which the school was continuously negligent until he left the school, his claim would have accrued at latest when that negligence ceased because he left, which was sometime on or after the March 23, 2023 meeting in which the school rejected the additional safeguards he and his mother requested.  (Compl. ¶¶ 90–92.).  *See Motta by Motta v. Eldred Cent. Sch. Dist.*, 101 N.Y.S.3d 472, 475 (App. Div. 2019) (finding a notice of claim filed on June 10, 2013, timely

20

although the plaintiff asserted injuries relating to a pattern of bullying going back to 2008, "given the continuing nature of the alleged bullying and negligent supervision at issue").

Plaintiff timely served his notice of claim under C.P.L.R. § 217-a, doing so within 90 days of the final meeting between him, his mother, and school administration.  (Response 2 (Dkt. No. 18).)  But he did not timely file the actual complaint (as far as his state law claims are concerned), because he did so more than a year and ninety days from when his claim accrued, assuming, as Plaintiff seems to based on the event referenced in his second notice of claim, that it accrued on March 23, 2023.[8]  Accordingly, his claim falls outside the relevant statute of limitations.  And the Complaint includes no grounds on which the Court could conclude Plaintiff is entitled to equitable tolling—nor could it, since "the doctrine of equitable tolling is not available in state causes of action in New York."  *Jang Ho Choi v. Beautri Realty Corp.*, 22 N.Y.S.3d 431, 452 (App. Div. 2016) (citation omitted); *see also C.L. v. Cty. of Oneida*, 212 N.Y.S.3d 533, 546 (Sup. Ct. 2024) (explaining the doctrine of equitable tolling "generally applies only 'to federal causes of action' raised in state court" (quoting *Shared Comm'cns Servs. of ESR, Inc. v. Goldman, Sachs & Co.*, 832 N.Y.S.2d 32, 33 (App. Div. 2007))).

---

[8] Even if the claim accrued when Plaintiff left for another school—which would have been at some point in the early summer or late spring of 2023, assuming a regular academic calendar—that still would be more than a year and ninety days before he filed this Complaint in mid-November 2024.  (*See* Compl. (Dkt. No. 1).)  Plaintiff's briefing suggests he may have misconstrued the statute of limitations in C.P.L.R. § 217-a as running from when the notice of claim is served; in fact, under C.P.L.R. § 217-a, it runs from when *the claim accrues*.  *See* C.P.L.R. § 217-a; *Catlin*, 241 N.Y.S.3d 870 ("For tort claims, the statute of limitations is one year and ninety days from the date the cause of action accrues." (citing, *inter alia*, C.P.L.R. § 217-a, and *Campbell v. City of N.Y.*, 4 N.Y.3d 200, 203 (App. Div. 2005))).

Plaintiff argues the statute of limitations can nevertheless be tolled here on the asserted basis that Plaintiff was a minor when the claim accrued and the Complaint was "timely filed within one year and 90 days of Plaintiff's 18th birthday, and within one year and 90 days since the filing of the second Notice of Claim." (Response 2 (Dkt. No. 18).)  The Court agrees with Plaintiff that he would have been entitled to the tolling of the statute of limitations during his infancy.  *See* C.P.L.R. § 208.  But there are no facts in the Complaint from which the Court could take notice of Plaintiff's age to conclude he is plausibly entitled to tolling or turned eighteen at a time that would make this case timely.  (*See generally* Compl.)  And the Response (the factual allegations in which the Court cannot consider as part of the Complaint) includes contradictory information as to Plaintiff's age.  (*See* Response 2 (Dkt. No. 18) (stating Plaintiff had "reached the age of majority by [the] time" the second Notice of Claim was filed on September 28, 2023, implying a birth year before 2006); *id.* Ex. M, at 9 (Plaintiff giving a birth year of 2006 in his 50-h hearing).)

Accordingly, Plaintiff's state law claims in Counts IV, V, and VI are dismissed without prejudice.  Plaintiff is granted leave to amend and, in an amended complaint, may allege sufficient facts from which the Court can conclude the state law claims are timely.[9]

---

[9] This statute of limitations does not bar Plaintiff's ADA claim.  Federal courts use New York's three-year statute of limitations for ADA Title II claims in New York, even against state or municipal defendants.  *See Keitt v. New York City*, 882 F. Supp. 2d 412, 425 (S.D.N.Y. 2011) ("The statute of limitations on [Plaintiff's ADA claims] is three years."); *Fox v. State Univ. of N.Y.*, 686 F. Supp. 2d 225, 232 (E.D.N.Y. 2010) ("In New York, claims brought under Title II of the ADA are subject to a three year period of limitations.").

### III.  Conclusion

For the aforementioned reasons, the Motion to Dismiss is granted as to Counts III, IV, V, and VI.  The Motion is otherwise denied.  To the extent that Plaintiff has a good faith basis for filing an amended complaint that addresses the deficiencies discussed in this Opinion, he must do so within thirty days of this Opinion.  The amended complaint will replace, not supplement, the previous complaint.  The Clerk of Court is respectfully directed to terminate the pending Motion (Dkt. No. 17).

SO ORDERED.

Dated:    January 30, 2026
          White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE